**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

RICKY B. CAMPBELL,         )
      Movant,           )
                     )
v.                     )      **Civil Action No. 5:07-0120**
                     )        **(Criminal No. 5:05-00013)**
                     )
UNITED STATES OF AMERICA,   )
      Respondent.      )

**PROPOSED FINDINGS AND RECOMMENDATION**

On February 26, 2007, Movant, acting *pro se*, filed his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.[1] (Civil Action No. 5:07-0120, Document No. 101.) By Standing Order, Movant's Motion was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Id., Document No. 105.)

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Complaint Filed with the FBI:**

On January 10, 2005, Movant telephoned the FBI's Pittsburgh Office alleging the following misconduct by Beckley police officers:

> RICK CAMPBELL admitted that he has some marijuana, but when the Beckley PD did a search on his house on 12/10/2004, they found a lot more marijuana than CAMPBELL admitted to having. During the search the officers were wiping off the fingerprints from the plastic bags that had marijuana in them. CAMPBELL also stated that the Beckley PD also seized many items that were not listed on the seizure warrant such as his Harley Davidson motorcycle. CAMPBELL believes that his neighbors who he had not had good relations with and who have keys to his house planted the marijuana. CAMPBELL has neighbors that witnessed the Beckley PD

---

[1] Because Movant is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

go into CAMPBELL's house at 11:05 a.m. on 12/10/2004, but the circuit court judge did not sign the warrant until 11:38 a.m. on 12/10/2004. CAMPBELL noticed the officers looking at their watches during the search. CAMPBELL also found a transmitter planted in his house with a police frequency. CAMPBELL knows that SGT. SWEENEY sells marijuana and has others sell marijuana for him. CAMPBELL stated SGT. SWEENEY's nephew, which is how CAMPBELL found out that the MI came from the Beckley PD lockup. [Redacted language] Relative of Sweeney that lives in Crab Orchard also sells marijuana for SGT. SWEENEY. A RICK CAMPBELL is a reference in ACS for case PG 183C-1253 serial 35. The serial and case could not be accessed.

(Id., Document No. 178-10, Exhibit J.) FBI Special Agent Terrance Schwartz interviewed Plaintiff twice concerning the above allegations. (Criminal Action No. 5:05-00013, Document No. 70, pp. 32 - 36.)

**B.    Criminal Action No. 5:05-0013:**

Movant was charged in a two-Count Indictment filed on January 11, 2005. (Criminal Action No. 5:05-0013, Document No. 1.) In Count One, Movant was charged with knowingly and intentionally possessing with the intent to distribute for remuneration a quantity of marijuana in violation of 21 U.S.C. § 841(a)(1). (Id.) In Count Two, Movant was charged with knowingly and intentionally manufacturing, by growing and cultivating, approximately 205 marijuana plants in violation of 21 U.S.C. § 841(a)(1). (Id.) On March 7, 2005, Movant, by counsel, Mr. Scott H. McCulloch, filed a Motion to Suppress Evidence arguing that the search warrant was invalid on its face.[2] (Id., Document No. 18.) On March 17, 2005, the District Court conducted a Pretrial Motions

---

[2]  In support of the Motion to Suppress, counsel argued as follows:

1.    That said evidence was obtained by means of searches and seizures without any warrants or other lawful authority;

2.    That said physical evidence was seized from the accused's person, property or possession as a result of searches and other illegal intrusions into the accused's personal property.

A.    Any search warrant allegedly authorizing the search of the accused's

2

Hearing. (Id., Document No. 26.) By Order dated March 21, 2005, the District Court denied

Movant's Motion to Suppress and granted the United States' oral Motion to Revoke Movant's

Bond.[3] (Id., Document No. 29.) On March 22, 2005, Movant pled guilty to Count Two of the

Indictment charging him with manufacturing approximately 205 marijuana plants in violation of 21

U.S.C. § 841(a)(1). (Id., Document Nos. 34 and 35.) A Presentence Investigation Report was

prepared. (Id., Document No. 47.) Movant's relevant conduct was determined based on a search of

his residence. (Id., ¶¶ 14 - 20.) In view of the relevant conduct, Movant's Base Offense Level was

determined to be 18. (Id., ¶ 32.) It was recommended that Movant receive a two-level enhancement

for possession of a firearm and a two level enhancement for obstruction of justice. (Id., ¶¶ 33 and

37.) It was not recommended that Movant receive a downward adjustment for acceptance of

responsibility. (Id., ¶ 39.) Movant, by counsel, Mr. S. Benjamin Bryant, filed the following

person or property was improperly issued, invalid on its face and not based on probable cause.

    B.    The arrest of the accused was illegal in that it was not based on a lawfully issued search warrant or upon probable cause; and

    3.    Defendant's arrest and the searches and seizures were unlawful, unreasonable and violative of the following provisions of the United States Constitution:

    A.    The prohibition against unreasonable searches and seizures that is guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution;

    4.    The affidavit on which the warrant was issued failed to allege facts sufficient to establish probable cause for believing the existence of the grounds on which the warrant was issued.

(Criminal Action No. 5:05-00013, Document No. 18, pp. 1 - 2.)

   [3] The United States argued that Movant and his wife had made threats to a potential prosecution witness in the case. The District Court heard testimony from Movant, Movant's wife, and the potential witness who was allegedly threatened. The Court found the potential witness' testimony to be credible. The Court noted the trial was scheduled for the following week and the seriousness of the accusations of threats. Therefore, the District Court granted the Motion to Revoke Bond. (Criminal Action No. 5:05-00013, Document No. 29, p. 2.)

objections to the presentence report: (1) the application of a two-level enhancement for obstruction of justice; (2) the denial of a three-level downward adjustment for acceptance of responsibility; (3) the application of a two-level enhancement for possession of firearms; and (4) the failure to apply the "safety valve" provision. (Id., pp. 23 - 27.)

Movant was sentenced on July 14, 2005. (Id., Document No. 43.) At sentencing, Movant raised objections to the recommendations contained in the Presentence Investigation Report including the recommendation that he receive a two-level firearm enhancement and a two-level obstruction of justice enhancement. (Id., Document No. 70.) The United States accepted Movant's proffer that the firearms were not connected to the offense, and the District Court sustained the objection. (Id., pp. 6 - 8.) In support of the obstruction of justice enhancement, the United States presented evidence that Movant contacted the FBI with allegations of police misconduct by the Beckley Police Department. During a bench conference, AUSA Bushong stated the following:

> MR. BUSHONG:  After he was indicted - - after he was indicted - - and made allegations about the Beckley Police Department planting evidence in his house. He, in fact, brought a piece of evidence into the office and suggested that it was not there before and it must have come from the Beckley P.D. He made a number of allegations about a police officer on Beckley P.D. as being a dirty cop. All of those allegations were tracked down, interviews conducted.
>
> THE COURT:  Which officer?
>
> MR. BUSHONG:  Stan Sweeney, Detective Stan Sweeney. Terry Schwartz and other members of the FBI spent a number of hours after this interview tracking that stuff down, and it all came back as uncorroborated.

(Id., p. 29.) Following the bench conference, FBI Special Agent Terry Schwartz testified that he investigated the allegations that Detective Sweeney stole evidence from the evidence locker and

found that Movant's claims were entirely fabricated. Agent Schwartz testified as follows concerning

the allegations asserted by Movant during the January 14, 2005, interview:

> A.   I asked him to - - he went on to proceed about how Beckley P.D. had put dope in his house, and also transmitter in his house, and this and that. I said, "Look, Mr. Campbell, I'm not interested in that. You're represented on that case. You've got an attorney."
>
> He told me he had an attorney, Scott McCulloch, so I said, "I'm not interested in that. I can't talk to you on that, because you're represented, but my reason to call you is because of these serious allegations you're making about a police officer over there at Beckley."
>
> \* \* \*
>
> A.   Well, it took me and my partner at that time, Tom Donnelly, about a week to run all these leads down, track these people down that Mr. Campbell told me he had bought the gun from. So I tracked down the individual who he claimed he bought the gun from, this individual's brother, and the daughter, who - - of the individual who he bought the gun from - - who he claimed he bought the gun from. I talked to numerous state police officers. I talked to Beckley P.D.
>
> Q.   Were any of the allegations substantiated through your investigation?
>
> A.   No. It was a fabricated story is what it turned out to be.

(Id., pp. 34 - 35.) On cross examination, Agent Schwartz testified as follows:

> Q.   So it's very clear that it is your opinion, I understand - - I want to understand this. It's your opinion that Mr. Campbell fabricated this story, made it up?
>
> A.   There is no doubt about it. All the names he gave me, I tracked them down. I interviewed them. I spoke with them, and they don't even know Ricky Campbell. They don't know a Stan Sweeney. These people don't know any of the folks that are supposedly involved in this scenario: Ricky Campbell, Stan Sweeney, guns. They don't know anything about it.

(Id., p. 39.) Agent Schwartz acknowledged that he did not investigate Movant's allegations

concerning the planted drugs and transmitter. (Id., p. 45.) Agent Schwartz testified as follows:

> Q.   You did no investigation concerning any allegations about a transmitter, did you?

5

A.      No.

Q.      You did no investigation about any allegations of any planted drugs?

A.      No.

Q.      You investigated allegations about this firearm and Stan Sweeney; is that correct?

A.      Absolutely. It was only in regards to the dirty cop.

* * *

THE COURT:        So his original complaint was that Detective Montgomery planted the marijuana and the transmitter in his house?

THE WITNESS:      Yes, Your Honor, maybe not - - maybe not the name was brought up, but the whole drug unit did all these things.

* * *

MR. BRYANT:       Well, are you certain he used Gant Montgomery's name in calling Pittsburgh, or was it "Beckley police"?

A.                I don't know who he said. I'm not certain on that, no, sir.

(Id., pp. 45 - 47.) AUSA Bushong then called Detective Gant Montgomery, who testified that he did not plant any drugs or an electronic transmitter in Movant's residence. (Id., p. 47.)

        At the conclusion of the above testimony, the District Court found by a preponderance of the evidence that Movant had lied to an FBI agent regarding misconduct by the Beckley Police Department, thereby overruling Movant's objection to the obstruction of justice enhancement. Specifically, the District Court found as follows:

THE COURT:        Well, I agree, and I'm going to overrule the objection and allow the obstruction. I think it's obvious to me what happened here, and I think it's beneath contempt, quite frankly.

                  Detective Montgomery has been in my court many times and

6

> is obviously, to me, a very professional, capable police officer who bends over backwards to do his job correctly and tell the truth, and for him and the organization that he is responsible for to be accused of something like that is totally outrageous. And I believe that it happened, and I believe you did it, Mr. Campbell. And it's clearly an obstruction of justice, and I'm going to allow the enhancement. And I'm tempted to consider whether I should sentence you above the five-year minimum here.

(Id., p. 51.) The District Court determined that Movant had a Base Offense Level of 18, and a Total Offense Level of 20, the Court having applied a two-level enhancement for objection of justice. (Id., Document No. 43, 45, and 70.) The District Court ordered that Movant serve a 60-month term of incarceration to be followed by a four-year term of supervised release. (Id.) The District Court also imposed a $100 special assessment. (Id.)

On July 29, 2005, Movant, acting *pro se*, filed a letter addressed to the Court which was construed as a notice of appeal. (Id., Document No. 48.) On August 4, 2005, Movant, acting *pro se*, filed an additional notice of appeal. (Id., Document No. 53.) On August 10, 2005, the Fourth Circuit Court appointed Ms. Joan Mooney to represent Movant in his direct appeal. (Id., Document No. 63.) In the appeal, counsel argued that the District Court erred by (1) imposing the gun enhancement pursuant to U.S.S.G. § 2D1.1(b)(1), and the obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1; and (2) failing to grant Movant the safety valve provision under U.S.S.G. § 5C1.1, which resulted in a sentence far above the guideline level, and substantially more than was needed to satisfy justice. Movant, acing *pro se*, filed a supplement brief arguing that trial counsel was ineffective for failing to seek a safety valve reduction. The Fourth Circuit Court of Appeals affirmed Movant's conviction and sentence on July 12, 2006. United States v. Campbell, 2006 WL 1920641 (4th Cir. 2006). Movant filed a petition for certiorari in the United States Supreme Court, which was

denied on November 27, 2006. <u>Campbell v. United States</u>, 502 U.S. 958, 127 S.Ct. 690, 166 L.Ed.2d 535 (2006).

On December 7, 2005, Movant, acting *pro se*, filed a "Motion for Relief from Judgment or Order Pursuant to Rule 60(b)." (Criminal Action No. 5:05-0013, Document No. 77.) In support of his Motion, Movant stated that he had obtained newly discovered evidence through the use of the Freedom of Information Act that "questions the testimony given by the Federal Bureau of Investigations and a United State of America official, and may move this Honorable Court to suppress the testimony." (<u>Id.</u>, Document No. 78.) Movant also filed an Affidavit in Support of his Motion stating that the Azden wireless transmitter, serial number EY-1714, that was discovered under a dresser in his residence following a search, was purchased by the City of Beckley on August 25, 1993, from Kustom Signal. (<u>Id.</u>, Document No. 79, ¶¶ 3 and 4.) Movant further stated that the "U.S. Assistant Attorney had knowledge of this device and still to this day has not brought this compelling information to the court's attention." (<u>Id.</u>, ¶ 5.) On June 22, 2006, Movant filed a "Motion to Supplement Pleadings: Rule 60(b) Pursuant to Federal Rules of Civil Procedure Rule 15(d)." (<u>Id.</u>, Document No. 93.) Movant stated that he wished to supplement his Rule 60(b) Motion with specific evidence in the form of exhibits, which were obtained following the filing of his Motion. (<u>Id.</u>, p. 2.) Movant attached as exhibits two letters from City of Beckley Attorney, William H. File III. In the letter dated September 1, 2005, Mr. File stated as follows:

> . . . I will advise you that the EY-1714 microphone you reference appears to be the microphone to a video unit purchased by the City of Beckley on August 25, 1993 from Kustom Signal. If the microphone was found in a private residence, it would have been lost by an officer while that officer was conducting a lawful search pursuant to a legally issued search warrant. . . .

(<u>Id.</u>, p. 11.) In the letter dated May 22, 2006, Mr. File explained as follows:

8

> . . . Corporal William P. Reynold is the officer who was assigned the transmitter that was lost. The transmitter was a standard part of an officer's equipment that is normally attached to his belt. This transmitter would have fallen off of the officer's belt while he was participating in a lawful search of a private residence pursuant to a legally issued search warrant . . .

(Id., p. 12.) Movant contended that the evidence supported that Movant was truthful about his claim that a transmitter was discovered inside his residence. (Id., p. 2.) Therefore, Movant argued that he should be resentenced because the District Court improperly applied an obstruction of justice enhancement believing that Movant had lied about the transmitter. (Id.)

By Memorandum Opinion and Order dated August 31, 2007, the District Court denied Movant's Rule 60(b) Motion. (Id., Document No. 118.) The District Court found that "there is no Rule 60(b) under the Federal Rules of Criminal Procedure, so Movant's motion was construed as being filed pursuant to the Federal Rules of Civil Procedure. The District Court therefore concluded that Movant's "Rule 60(b) motion is misplaced and/or premature." (Id., p. 2.) The District Court further held that "to the extent defendant is attempting to set aside his criminal judgment, he has not stated any grounds that would permit this court to do so under the Federal Rules of Criminal Procedure." (Id.) On November 13, 2007, Movant filed a "Motion for Reconsideration Pursuant to Relief under Rule 60(b)." (Id., Document No. 141.) By Memorandum Opinion and Order entered on December 27, 2007, the District Court denied Movant's "Motion for Reconsideration Pursuant to Relief under Rule 60(b)." (Id., Document No. 145.) Movant appealed the District Court's Order denying his Motion to Reconsider. The Fourth Circuit Court of Appeals denied Movant's motion to proceed *in forma pauperis* and dismissed the appeal for the reasons stated by the District Court.[4] United States v. Campbell, 2008 WL 638176 (4th Cir. 2006).

---

[4] The Fourth Circuit stated that "[w]e have reviewed the record and find no reversible error." *United States v. Campbell*, 2008 WL 638176 (4th Cir. 2006).

C.      **Civil Action No. 5:06-0659:**

On August 25, 2006, Movant, acting *pro se*, filed a <u>Bivens</u> action in the Southern District of West Virginia alleging a violation of his Fourth Amendment right to privacy, the West Virginia Wiretapping and Electronic Surveillance Act, the federal Omnibus Crime Control and Safe Streets Act, and a State law claim of invasion of privacy. (Civil Action No. 5:06-0659, Document No. 1.) Movant named the following as defendants: (1) The Beckley Police Department; (2) Billy Cole, Former Chief of Police; (3) Gant Montgomery, Beckley Police Officer; (4) Reginald Bailey, Beckley Police Officer; (5) William Reynolds, Beckley Police Officer; (6) The City of Beckley; (7) Emmett S. Pugh, Mayor of Beckley; (8) Chuck Smith, Beckley Police Officer; (9) Tim Sweeney, Beckley Police Officer; (10) Stanley Sweeney, Beckley Police Officer; (11) Britney D. Smith, Administratrix of the Estate of Charles Smith II; (12) Councilman A.K. Minter, Jr.; (13) Councilwoman Ann W. Worley; (14) Councilman Steven B. Nickell; (15) Councilman Tim R. Berry; (16) Councilman Howard L. Mollohan; (17) Councilman Robert R. Rappold; (18) Councilman A. Lee Leftwich; (19) FBI Beckley, West Virginia; and (20) Doe Defendants 1 - 50. (<u>Id.</u>) Specifically, Movant alleged that three days after the search of Movant's residence, Movant discovered a wireless transmitter in his bedroom that was illegally placed in his residence to gather information. (<u>Id.</u>) On October 4, 2006, Defendants filed a Motion to Dismiss. (<u>Id.</u>, Document No. 19.) On November 27, 2006, Movant filed a Response to the Motion to Dismiss. (<u>Id.</u>, Document Nos. 42 - 44.) On December 18, 2006, Defendants filed a Reply to Movant's Response. (<u>Id.</u>, Document No. 65.) United States Magistrate Judge Mary E. Stanley submitted her Proposed Findings and Recommendation on June 6, 2007, recommending the District Court grant in part and deny in part Defendants' Motion to Dismiss. (<u>Id.</u>, Document No. 78.) By Memorandum Opinion and Order entered on August 8, 2007, United States

10

District Judge Thomas E. Johnston granted in part and denied in part Defendants' Motion to Dismiss and referred the matter back to Judge Stanley for further proceedings on Movant's (1) Fourth Amendment claim against the individual defendants, the City of Beckley, and Doe Defendants 1 - 50; (2) ECPA claim against the individual defendants, the City of Beckley, and Doe Defendants 1 - 50; (3) WVWESA claim against the individual defendants and Doe Defendants 1 - 50; and (4) invasion of privacy claim against the individual defendants, the City of Beckley, and Doe Defendants 1 - 50. (Id., Document No. 86.)

On November 4, 2008, Movant obtained counsel. On November 12, 2008, Defendants filed a Motion for Summary Judgment. (Id., Document No. 323). On December 2, 2008, Movant filed a Response to Defendants' Motion for Summary Judgment, and a Cross-Motion for Summary Judgment. (Id., Document No. 333.) By Order entered on April 2, 2009, the District Court vacated its order referring the action to Magistrate Judge Stanley for findings of fact and recommendation. (Id., Document No. 335.) By Memorandum Opinion and Order entered on June 16, 2009, United States District Judge Johnston granted Defendants' Motion for Summary Judgment and denied Movant's Motion for Summary Judgment.[5] (Id., Document No. 337.)

**D.      Section 2255 Motion:**

On February 26, 2007, Movant, acting *pro se*, filed his Motion Under 28 U.S.C. § 2255 to

---

[5]  The District Court granted Defendants' Motion for Summary Judgment based upon the following findings: (1) Movant was not entitled to recovery under ECPA and WVWESA because Movant admitted that he is not a "person whose wire, oral, or electronic communication has been intercepted, disclosed, or intentionally used" (2) Movant was not entitled to relief under *Bivens* because Movant admitted that none of his conversations were intercepted or used in any way; (3) Movant's State law claim of invasion of privacy failed because Movant failed to allege that his personal affairs were intruded upon as he failed to claim that any of his conversations were recorded and made public. (Civil Action No. 5:06-0659, Document No. 337.)

Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. (Civil Action No. 5:07-0120, Document No. 101.) As grounds for *habeas* relief, Movant alleges as follows:(1) Ineffective assistance of counsel; (2) Prosecutorial misconduct; (3) Sentence was imposed in violation of the due process right to be sentenced on the basis of accurate information; and (4) Sentencing court improperly failed to apply the "safety valve" reduction as set forth in U.S.S.G. § 5C1.2. (Id., pp. 5 - 6.) In support of his Motion, Movant contends that defense counsel, S. Benjamin Bryant, was ineffective in failing to present mitigating factors at sentencing and failing to properly investigate Movant's allegations that an electronic transmitter was planted in his home. (Id., pp. 10 - 13.) Next, Movant alleges that the Assistant United States Attorney presented false testimony and concealed "significant exculpatory evidence from the Sentencing Court in order to have Mr. Campbell lose his acceptance of responsibility, which in turn caused Mr. Campbell to lose the 'Safety Valve' application." (Id., pp. 15 - 17.) Finally, Movant alleges that he has newly discovered evidence proving that he did not obstruct justice by reporting that the Beckley Police Department planted an electronic transmitter in his home. (Id., pp. 23 - 25.) Specifically, Movant states that he has evidence that the Beckley Police Department owned the electronic transmitter found in his home. (Id., p. 7.) Thus, Movant contends that the obstruction of justice enhancement was improperly applied based upon "false and misleading testimony." (Id., p. 24.)

On June 28, 2007, Movant filed a Motion to Amend and an Amended Brief in Support. (Id., Document Nos. 112 and 113.) In his Motion to Amend, Movant states that "[t]his amendment represents a brief to enhance the degree of factual detail and legal specificity with which a claim of 'Prosecutorial Misconduct from Perjured Testimony' and 'Ineffective Assistance of Counsel' can be asserted as grounds for relief." (Id., Document No. 112.) On March 4, 2008, Movant filed his

second Motion to Amend again stating that "[t]his brief will further enhance the degree of factual detail and legal specificity, with newly discovered material facts, that will support [Movant's] claim of 'Prosecutorial Misconduct from known Perjured testimony' and 'Ineffective Assistance of Counsel.'" (Id., Document No. 151.) As grounds for relief in his Second Amended Motion and Brief, Movant argues as follows:

> (1)  [Movant's] Fourth Amendment right to the United States Constitution was violated when members of the Beckley Police Department entered his home based on a constitutionally invalid search warrant for lack of particularity, lack of oath and affirmation on both the 'Attachment A' and the 'Affidavit,' lack of dates and times on the 'Attachment A' and the 'Affidavit' and lack of collaborating the validity of the information, provided by an anonymous caller. (Id., Document No. 156-2.)

> (2)  [Movant's] Fourth Amendment right to the constitution was violated when members of the Beckley Police Department entered his home with a constitutionally invalid search warrant, where the affidavit in support of the application for the search warrant contained false and misleading statements and information. (Id., Document No. 156-3.)

> (3)  [Movant's] Sixth Amendment right to effective assistance of counsel was violated when his attorney, Scott McCulloch, failed to conduct a prompt, complete and accurate investigation of all the circumstances surrounding the discovery of the illegally placed transmitter, time of entry into the [Movant's] home, deficiencies of the search warrant, and failed to inform the [Movant] that he was facing a life threatening disease. (Id., Document No. 156-4.)

> (4)  [Movant's] Fifth and Fourteenth Amendment right to the United States Constitution was violated when the government failed to expose the false and misleading testimony of its witnesses in the [Movant's] July 14, 2005, sentencing hearing. (Id., Document No. 156-5.)

> (5)  [Movant's] Sixth Amendment right to effective assistance of counsel was violated when his attorney, Joan Mooney, failed to meet with the [Movant] to discuss the numerous issues of the [Movant's] instant case. As a result of Mooney failing to discuss the issues and develop a trial strategy, this resulted in a brief being filed without the [Movant's] input, permission, and knowledge, which resulted in a moot brief. (Id., Document No. 156-6.)

By Orders entered on October 20, 2008, the undersigned denied Movant's Motion for Bail and

ordered the United States to file an Answer to Movant's claims as set forth in his Section 2255
Motion and Memorandum in Support. (Id., Document No. 166.)

On February 4, 2009, Respondent filed its Response to Movant's Motion Under 28 U.S.C.
§ 2255. (Id., Document No. 175.) Respondent argues as follows: (1) Movant's voluntary guilty plea
waived any claims concerning the validity of the search of his residence (Id., pp. 15 - 16.); (2)
Movant's claims should be rejected as meritless even if the Court finds that Movant's claims are not
barred (Id., pp. 17 - 18.); (3) Movant has failed to demonstrate that he received constitutionally
defective representation at any stage of the criminal proceedings (Id., pp. 18 - 22.); (4) Movant has
failed to demonstrate that his constitutional rights were violated by prosecutorial misconduct (Id.,
pp. 22 - 24.); and (5) Movant was not deprived of his Sixth Amendment right to effective assistance
of appellate counsel (Id., pp. 25 - 27.)

On March 9, 2009, Movant filed his "Response to Government's Answer." (Id., Document
No. 178.) Movant argues as follows: (1) Movant's guilty plea was involuntary (Id., pp. 2 - 4.); (2)
The United States misled the District Court concerning Movant's allegations about the transmitter
and alleged planted marijuana (Id., pp. 21 - 30.); (3) Trial counsel, Scott McCulloch, was ineffective
in failing to properly investigate and in failing to follow Movant's "clear and specific instructions
that he wanted McCulloch to bring every defect of the search warrant to light, no matter now minor
that it may seem;" (Id., pp. 4 - 7, 30 - 37.); (4) Trial counsel, Mr. Benjamin Bryant, was ineffective
in failing to "complete an accurate investigation into the transmitter that was discovered in
Campbell's bedroom (Id., pp. 37 - 39.); and (5) Appellate counsel, Ms. Joan Mooney, was
ineffective in failing to consult with Movant prior to filing his direct appeal and in failing to raise
the issue of the wireless audio transmitter on direct appeal (Id., pp. 39 - 44.)

14

## DISCUSSION

The relevant portion of Section 2255 provides as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

In order to be cognizable under Section 2255, claims based on other than constitutional or jurisdictional grounds must present exceptional circumstances that justify permitting a collateral attack. Stated another way, the alleged error must amount to "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). Section 2255 is not a substitute for direct appeal. United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Accordingly, errors warranting a reversal on direct appeal will not necessarily support a collateral attack. Knight v. United States, 37 F.3d 769, 772 (1st Cir.1994). See United States v. Addonizio, 442 U.S. 178, 184, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Failure to raise an issue presented in sentencing on direct appeal which is non-constitutional in nature amounts to a waiver of the right to contest the issue in Section 2255 proceedings. See United States v. Emanuel, 869 F.2d 795 (4th Cir. 1989).

With respect to issues which are constitutional in nature, absent a showing of good cause for and prejudice from failing to appeal as may be shown by a defendant in criminal proceedings, Section 2255 is no substitute, and the failure precludes Section 2255 review. Theodorou v. United States, 887 F.2d 1336, 1339-40 (7th Cir. 1989)("[A]bsent a showing of cause and prejudice, a defendant is barred from raising any constitutional challenge in a section 2255 proceeding which

could have been raised on direct appeal."); United States v. Essig, 10 F.3d 968, 979 (3d Cir. 1993);

See also United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994), cert. denied, 517 U.S. 1161,

116 S.Ct. 1555, 134 L.Ed.2d 657 (1996). The standard is conjunctive. As a general matter, therefore,

movants must show good cause for and prejudice from their failure to raise any constitutional issues

advanced under Section 2255 on direct appeal. See Theodorou, supra, 887 F.2d at 1340.

Constitutional claims of ineffective assistance of counsel are the exception. They are more properly

raised in Section 2255 proceedings and not on direct appeal. United States v. Richardson, 195 F.3d

192 (4th Cir. 1999), cert. denied, 528 U.S. 1096, 120 S. Ct. 837, 145 L.Ed.2d 704 (2000).

1.    **Validity of Search of Movant's Residence** .

First, Movant alleges that his Fourth Amendment right was violated when members of the

Beckley Police Department entered his home based on a constitutionally invalid search warrant.

Specifically, Movant argues that the search warrant was invalid based upon the following: (1) The

"lack of particularity, lack of oath and affirmation on both the 'Attachment A' and the 'Affidavit,'

lack of dates and times on the 'Attachment A' and the 'Affidavit' and lack of collaborating the

validity of the information, provided by an anonymous caller;" and (2) The "affidavit in support of

the application for the search warrant contained false and misleading statements and information."

(Civil Action No. 5:07-120, Document Nos. 156-2 and 156-3.) Respondent argues that Movant's

voluntary guilty plea waived any claims concerning the validity of the search of his residence. (Id.,

Document No. 175, pp. 15 - 16.) Movant asserts that he did not waive his right to challenge the

validity of the search by entering a guilty plea. (Id., Document No. 178.) Specifically, Movant

contends that his plea was involuntary because he was suffering from drug withdrawal due to the

lack of his pain medication, which rendered Movant incapable of making an informed decision as

to his plea. (Id., pp. 2 - 4.)

16

It is well established that "[a] knowing and voluntary guilty plea waives antecedent nonjurisdictional errors, including claims of unlawful search and seizure." United States v. Devaughn, 2003 WL 22057945, at * 1 (4th Cir. Sept. 3, 2003)(unpublished)(citing Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)). In the underlying criminal action, Movant, by counsel, filed a Motion to Suppress arguing that the search warrant was invalid. The District Court conducted a hearing on Movant's Motion to Suppress, and concluded that there was sufficient probable cause to support the search warrant.[6] Movant subsequently pled guilty. During the plea hearing, the Court inquired concerning Movant's competency as follows:

| | |
|---|---|
| THE COURT: | Okay. Have you taken any drugs, medicine or pills, or drunk any alcoholic beverages in the last 24 hours? |
| THE DEFENDANT: | I've took my blood pressure medicine, clonidine. |
| THE COURT: | Okay. As far as you know, are you in good health mentally and physically here? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | All right. Does either counsel have any reason to question Mr. Campbell's competency? |
| MR. BUSHONG: | No, Your Honor. |

--------------------------------------------------

[6] The District Court denied the Motion to Suppress finding that there was sufficient probable cause to support the search warrant after hearing testimony from five witnesses: Judge H.L. Kirkpatrick, Adam Shane Meadows, Amber Green, Gant Montgomery, and Joseph Green. In support of its conclusion, the District Court found as follows: (1) The police had two anonymous calls concerning the marijuana at Movant's residence; (2) The police corroborated the call by conducting surveillance of Movant's residence; (3) The police noticed an amount and duration of traffic into the residence that in their experience supported drug trafficking; (4) The police conducted a traffic stop of a vehicle immediately after it left Movant's residence and discovered a quantity of marijuana, the drug that the police believed was being traded in Movant's residence. (Criminal Action No. 5:05-0013, Document No. 29, pp. 1 - 2.) Based upon a review of the record, the undersigned finds no error in the District Court's conclusion that based upon the totality of the circumstances there was sufficient probable to support the search warrant.

17

MR. McCULLOCH:        No, Your Honor.

THE COURT:        All right. The court finds, therefore, Mr. Campbell, that you are competent to proceed further.

(Id., Document No. 178-3, Exhibit C, pp. 4 - 5.) The record further reflects that Movant's guilty plea was made with full knowledge of its consequences. The Court questioned Movant and trial counsel as follows concerning Movant's understanding of the plea agreement:

THE COURT:        All right. Thank you, Mr. Bushong. Mr. Campbell, you have heard the Assistant United States Attorney's summary of the plea agreement. Does what he said accurately reflect the agreement you made with the government in this case?

THE DEFENDANT:        Yes, sir.

THE COURT:        Do you understand the provisions of the plea agreement?

THE DEFENDANT:        Yes, sir.

THE COURT:        Have you gone over the plea agreement carefully with your counsel, and do you understand everything in it?

THE DEFENDANT:        Yes, sir.

THE COURT:        Mr. McCulloch, in your professional opinion, what are the advantages which accrue to Mr. Campbell under the plea agreement as opposed to standing trial on the underlying charges?

MR. McCULLOCH:        Your Honor, there is certainly the one count that's being dismissed that he would be in jeopardy of if he went to trial; and there are some other matters that have not been addressed by way of indictment that possibly could have been addressed, so we are satisfied that this is the best route to go.

THE COURT:        All right. Mr. Campbell, have you discussed the advantages of pleading guilty with Mr. McCulloch, and do you agree with his assessment?

18

THE DEFENDANT:  Yes, sir.

* * *

THE COURT:  . . . Mr. Campbell, do you understand that by tendering a plea of guilty to the court to Count Two of the indictment that you become exposed to the following maximum statutory penalties:

A term of imprisonment of not less than five years, nor more than forty years; a fine of $2 million, or twice the gross pecuniary loss resulting from your conduct, whichever is greater; a term of supervised release of at least four years, but not more than five years; a criminal assessment of $100, pursuant to 18 United State Code Section 3013, which is mandatory; denial of federal benefits for a period of up to five years; restitution as may be ordered by the Court.

Do you understand that if the court finds that you violated any of your conditions of supervised release that you can be given additional time in prison over and above the original term of imprisonment included in the court's initial sentence?

THE DEFENDANT:  Yes, sir, I do.

THE COURT:  Okay. And do you understand and have you discussed with your attorney all of the maximum penalties as I've just read them off to you?

THE DEFENDANT:  Yes, sir.

(Id., pp. 11 - 13.) Based on the foregoing, the undersigned finds that Movant's plea was entered into knowingly and voluntarily. Accordingly, Movant's voluntary plea resulted in a waiver of any alleged errors concerning the search of his residence.

## 2.  Claims of Ineffective Assistance of Counsel.

Indigent criminal defendants have the constitutional right to effective assistance of counsel through a direct appeal. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)

When a movant claims ineffective assistance of counsel as a basis for seeking relief under Section 2255, the burden is on the movant to prove that his trial attorney failed to render effective assistance. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In Strickland, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. Id. The first prong is competence. The movant must show that the representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687 - 691, 104 S.Ct. at 2064 - 2066. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing Court must be highly deferential in scrutinizing the performance of counsel. Strickland, 466 U.S. at 688-89, 104 S.Ct. at 2065 - 2066.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . .. [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 460 U.S. at 690, 104 S.Ct. at 2066. The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all of the circumstances. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977). The second prong is prejudice. The movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). An attorney's mere mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance. Murray v. Carrier, 477

U.S. 478, 106 S. Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.") The movant must therefore show (1) that his attorney's performance was constitutionally inadequate, i.e., that he committed errors so serious that his performance "fell below an objective standard of reasonableness" and (2) that his attorney's performance prejudiced him such that it rendered the proceeding fundamentally unfair or made the result unreliable. Strickland, 466 U.S. at 687 - 88, 104 S.Ct. at 2064 - 2065; Fitzgerald v. Thompson, 943 F.2d. 463 (4th Cir. 1991), cert. denied, 502 U.S. 1112, 112 S. Ct. 1219, 117 L.Ed.2d 456 (1992).

### A.    Movant's Claim that Scott McCulloch was Ineffective.

Movant alleges that his trial counsel was ineffective in failing to conduct a prompt, complete, and accurate investigation of the following: (i) all the circumstances surrounding the discovery of the illegally placed transmitter in Movant's residence; (ii) the time that police officers entered Movant's residence to conduct the search; and (iii) all deficiencies of the search warrant.[7] (Civil Action No. 5:07-0120, Document No. 156-4.)

An allegation that an attorney conducted an inadequate investigation does not warrant relief absent a proffer of the specific favorable evidence the investigation would have brought out. See

---

[7] To the extent Movant alleges that Mr. McCulloch acted ineffectively in failing to inform Movant that counsel was facing a life threatening disease, the undersigned finds the claim to be without merit. (Civil Action No. 5:07-0120, Document No. 156-4.) Movant fails to specify how Mr. McCulloch's health concerns adversely effected Movant's case. (Id.) Movant merely makes the following conclusory statement: "[A]s a result of the tremendous pressure of a life threatening disease placed on McCulloch personally and on his family, McCulloch failed to act as a zealous advocate for Campbell." (Id., Document No. 178, p. 36.) The undersigned has thoroughly reviewed the record and finds no evidence indicating that Mr. McCulloch's health concerns resulted in inadequate representation of Movant.

21

Bassette v. Thompson, 915 F.2d 932, 940 - 41 (4ᵗʰ Cir. 1991). The reasonableness of an investigation made by counsel must be evaluated under the totality of the circumstances facing the attorney. See Bunch v. Thompson, 949 F.2d 1354 (4ᵗʰ Cir. 1991). In claims of ineffective assistance of counsel for failure to investigate, the Supreme Court has stated that while "[c]ounsel could well have made a more thorough investigation than he did; nevertheless in considering claims of ineffective assistance of counsel, '[w]e address not what is prudent or appropriate, but only what is constitutionally compelled.'" Burger v. Kemp, 483 U.S. 776, 794, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987)(quoting United States v. Cronic, 466 U.S. 648, 665, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)).

   *(i)      Discovery of Electronic Transmitter:*

   Movant alleges that Mr. McCulloch failed to investigate the discovery of the transmitter that was found inside Movant's residence following the search. Although Movant contends that Mr. McCulloch failed to investigate the transmitter, Movant acknowledges that Mr. McCulloch made inquires concerning the ownership of the transmitter.[8] (Civil Action No. 5:07-0120, Document No. 178, pp. 26 - 27, 34.) The undersigned further notes that Mr. McCulloch's representation of Movant was terminated following Movant's plea of guilty.[9] The record indicates that Movant pled guilty following the denial of his Motion to Suppress. Movant does not claim that there was information

---

   [8]  Movant states that "McCulloch failed to investigate who the transmitter belonged to." (Civil Action No. 5:07-0120, Document No. 178, p. 34.) In his summary of the facts, however, Movant stated that "Although Montgomery testified that he did not 'plant' the transmitter in the Campbell's home he had knowledge of it as early as February 2005 when Campbell's former attorney, Scott McCulloch, approached him with pictures of the device." (*Id.*, p. 26.)

   [9]  By letter dated April 4, 2004, Mr. Bryant notified Mr. McCulloch that "Ricky Campbell has retained me to represent him in the referenced criminal action, through all proceedings remaining in the United States District Court. He requests that you withdraw as counsel in the criminal case, but asks that you continue to handle asset forfeiture claims for him . . . ." (Civil Action No. 5:07-0120, Document No. 178-14, Exhibit N.)

obtained from the use of the transmitter that Movant sought to have suppressed. Further, Movant does not contend that there was any information obtained from the transmitter that was used to persuade Movant to plead guilty. In fact, Movant concedes that no conversations were intercepted from the transmitter that was discovered in his residence.[10] (Civil Action No. 5:06-0659, Document No. 333-1, p. 2.) Thus, Movant has not established that but for counsel's alleged error of failing to properly investigate the discovery of the transmitter, the results of the proceedings would have been different. The undersigned therefore finds that considering the totality of the circumstances Mr. McCulloch did not act ineffectively by failing to investigate the allegations concerning to the transmitter.

> (ii) **Time of Search:**

Next, Movant contends that Mr. McCulloch failed to properly investigate the time that the search warrant was executed. Movant asserts that police officers searched his residence prior to obtaining a search warrant. During the Motion to Suppress hearing, Mr. McCulloch called five witnesses: H.L. Kirkpatrick, III, Adam Shane Meadows, Amber Green, Gant Montgomery, and Joseph Green. (Civil Action No. 5:07-0120, Document No. 178-6, Exhibit F.) Judge Kirkpatrick testified that he did not recall the exact time he signed the search warrant, "but I know it would have been before lunch time." (Id., p. 7.) Mr. Meadows, Judge Kirkpatrick's bailiff, testified that Detective Montgomery arrived with the search warrant before lunch, but "I can't say it was after 11:30" a.m. (Id., p. 9.) Ms. Green, Movant's neighbor, testified that she observed police officers at

---

[10]  The transmitter was found in the on position and the nine-volt battery in the transmitter can only last for approximately eight to ten hours. Movant was arrested following the search of his residence and remained in custody for approximately 24 hours. (Civil Action No. 5:06-0659, Document Nos. 337, p. 3, Document No. 323-11, p. 6, and Document No. 325, p. 2.)

Movant's residence "about 11:30" a.m. (Id., pp. 10 - 11.) Detective Montgomery testified that the property receipt portion of the affidavit indicated that the search began at 12:15 p.m. and ended at 2:45 p.m. (Id., pp. 26 - 27.) Mr. Green, Movant's neighbor, testified that he noticed officers at Movant's house at 11:15 a.m. (Id., p. 34.) Based upon the above, it appears clear that Mr. McCulloch adequately investigated the timing of the search. Although the District Court ultimately found the argument to be without merit, Mr. McCulloch obtained witnesses in support of Movant's claim that police officers conducted the search prior to obtaining a warrant.[11] Therefore, the undersigned finds that Mr. McCulloch acted effectively in his investigation concerning the timing of the search of Movant's residence.

*(iii)*     ***Deficiencies of the Search Warrant:***

Movant contends that Mr. McCulloch failed to investigate and argue all alleged deficiencies in the search warrant. Specifically, Movant states that Mr. McCulloch failed to address the following issues:

> (a) The search warrant was based on false and malicious information provided by the informant; (b) The information that the informant provided was uncorroborated by the affiant or any other member of the Beckley Police Department; © There was no verification as to the validity of any part of the information provided by the informant; (d) The search warrant did not describe the property to be seized but only referenced it as "Attachment A;" (e) The "Attachment A" property to be seized was not attached to the search warrant; (f) When the Petitioner's attorney did produce the "Attachment A" it had no Oath and Affirmation; (g) "Attachment A" had no date as to when it was complied; (h) "Attachment A" had no signature of the issuing judge; (I) The search warrant did not describe the Affidavit; it only made reference to it as being attached; (j) When McCulloch did produce the Affidavit it did not have an oath

---

[11]  During the Pretrial Motions Hearing, the District Court acknowledged that "[t]he timing is a little troublesome based on Mr. Green's testimony." (Civil Action No. 5:07-0120, Document No. 178-6, Exhibit F, p. 41.) The District Court, however, explained that the search inventory indicated "that the search began a 12:15 and ended at 2:45, and I have no reason to disbelieve Detective Montgomery's testimony . . .." (*Id.*)

and affirmation; (k) The Affidavit had no signature of the issuing judge; (l) The Affidavit had no signature of the issuing judge; (m) The Affidavit did not describe the property to be seized; (n) The search team seized unauthorized property because the affiant was not present during the first half of the search nor was the property to be seized attachment present; (o) There was two search warrants. The first one was unsigned and the second which was produced after the search was signed; and (p) The final and most significant fact reported was that one of the officers kept watching his watch the first 15 to 20 minutes that he was in the house.

(Civil Action No. 5:07-0120, Document No. 178, pp. 5 - 6.) Finally, Movant alleges that Mr. McCulloch "issued numerous subpoenas for the suppression hearing yet he only called four witnesses to testify for the defense." (Id., p. 8.) Respondent argues that Movant's claim that Mr. McCulloch was ineffective by failing to address the deficiencies of the search warrant is without merit. (Id., Document No. 175, pp. 20 - 22.) Respondent states that Mr. McCulloch argued that the search warrant was invalid because there was no credible information to support the warrant. (Id.) Respondent notes that Mr. McCulloch thoroughly examined each witness during the pretrial motions hearing. (Id.)

Based upon a review of the record, the undersigned finds that Mr. McCulloch effectively represented Movant concerning the alleged deficiencies of the search warrant. In the Motion to Suppress, Mr. McCulloch presented the following arguments: (1) The Affidavit was neither signed or notarized by a law enforcement officer; (2) The Affidavit contained information that was uncorroborated by the affiant or any other law enforcement officer; (3) There was not a "large amount of traffic" coming to and at Movant's residence; (4) A "large amount of traffic" coming to and leaving the residence does not in and of itself give credence to the notion that controlled substances may be in the residence; (5) The Affidavit failed to state that the individuals stopped leaving Movant's residence, and found to be in possession of drugs, specifically denied purchasing the drugs from Movant's residence; (6) The Affidavit contains statements of knowing or reckless

falsity with regard to the high volume of traffic coming to and leaving the residence; (7) The anonymous tip contained in the Affidavit was uncorroborated; and (8) The Affidavit provides no substantial basis for the warrant. (Civil Action No. 5:07-0120, Document No. 178-5, Exhibit E.) A review of the transcripts reveals that Mr. McCulloch thoroughly questioned Detective Montgomery concerning the search warrant and supporting affidavit during the pretrial motions hearing. (Id., Document No. 178-6, Exhibit F.) Based upon Detective Montgomery's testimony, Mr. McCulloch argued that Detective Montgomery had no creditable information to support his conclusion that there was marijuana present in Movant's residence. (Id.) Mr. McCulloch further asserted that the search warrant was based upon conclusory allegations. (Id.) Specifically, Mr. McCulloch stated as follows:

> Your Honor, first, based on the four corners of the warrant - - or the four corners of the affidavit, it's our belief that based on the uncorroborated anonymous tip, there was no basis that this tip was either credible or reliable. That's Paragraph 1. There was nothing done to corroborate any of this in any reliable manner, other than the fact that folks would come and go, which is certainly no evidence of any sort of illegal activity.
>
> * * *
>
> There is just no evidence in that affidavit that the residents of 127 Jarrell Street were selling drugs, and no information in there that said, "I saw marijuana," and no undercover buys. There is no statement from a person that was arrested after he left there that he got those drugs at 127 Jarrell Street.
>
> * * *
>
> . . . U.S. v. Miller says an informant's tip is rarely adequate, on its own, to support a finding of probable cause. And there is was nothing to shore up anything that the informant said with regard to drugs actually being in that house. The coming and goings of twelve people in several weeks' time certainly is not a high volume of traffic, and I would argue that the affidavit, on its face, is insufficient.

(Id., pp. 35 - 40.) Thus, Mr. McCulloch adequately challenged the validity of the search warrant.

Furthermore, the decision of whether and how to object to evidence is a question of strategy for trial counsel. An attorney's strategic decision is presumed reasonable and protected from second guessing under Strickland. There is no evidence that Movant was prejudiced by counsel's failure

26

to assert all of the above alleged deficiencies in the search. Movant's conclusory argument that counsel would have been successful by asserting all of the above alleged errors is without merit. The District Court reviewed the search warrant and affidavit and found based on a totality of the circumstances that the search warrant was valid. Finally, Mr. McCulloch's decision to not call all subpoenaed witnesses during the pretrial motions hearing was a question of strategy and did not result in ineffective assistance of counsel. See Huffington v. Nuth, 140 F.3d 572, 580 (4th Cir. 1998)(finding that although "a lawyer's failure to investigate a witness who has been identified as crucial may indicate an inadequate investigation, the failure to investigate everyone whose name happens to be mentioned by the defendant does not suggest ineffective assistance"). Movant does not allege that counsel failed to investigate or subpoena witnesses who were identified as crucial. Accordingly, Movant's ineffective assistance of counsel claim on this ground should be dismissed.

> **B.      Movant's Claim that Benjamin Bryant was Ineffective.**

Movant contends that Mr. Bryant acted ineffectively by failing to conduct a thorough investigation as to the ownership of the transmitter. Specifically, Movant states as follows:

> Bryant made a feeble attempt to discover who the transmitter belonged to by sending out subpoenas to the Azden Corporation, who are the manufactures of the transmitter. Azden replied that they did not keep any type of records that would verify who owned the device and suggested that we go directly to who we suspected owned the device. Campbell agreed with Azden and instructed Bryant to subpoena the records of the Beckley Police Department. However, for reasons only known to Bryant, he refused to do so. Campbell did not understand why Bryant would not follow his instructions but was limited as to what he could do about this. Campbell was in Southern Regional Jail at this time; nor did Campbell have any idea of what to do.

(Civil Action 07-0120, Document No. 178, p. 37.) Movant contends that "[h]ad Bryant followed any of the specific instructions of Campbell there is every reason to believe that the outcome of any one part of Campbell's criminal case would have had a vastly different outcome." (Id., p. 39.)

Based upon a review of the record and Mr. Bryant's declaration, the undersigned finds that Mr. Bryant did not act ineffectively. In his declaration, Mr. Bryant explains that he attempted to determine the ownership of the transmitter by serving a subpoena duces tecum upon the manufacturer of the device, Azden Corporation. (Civil Action No. 5:07-0120, Document No. 175-1, Exhibit 7, p. 18.) Azden advised Mr. Bryant that "it did not keep data or records from which the transmitter could be tracked" and "it could not provide any information that would help identify a person or organization that ever owned the transmitter." (Id.) Mr. Bryant states that he considered and discussed with Movant alternate methods for determining ownership of the transmitter, such as (1) simply asking the police if they owned or planted the transmitter, (2) issuing a subpoena to Beckley Police Department demanding production of records reflecting electronic transmitters they owned or used, or (3) attempting to obtain sets of finger prints from officers present in Movant's home during the search. (Id.) Mr. Bryant explains that he recommended as follows:

> I recommended to Campbell that we should not subpoena records from BPD, or simply ask BPD about the transmitter, or try to obtain BPD officers' fingerprints because: (I) there was not a Title III order in the case authorizing the interception of oral communications, nor any similar order from a Circuit Court in Raleigh County; (ii) therefore if BPD had in fact 'planted' the transmitter in the Campbell residence, then it followed that BPD or some member thereof likely committed felony violations of federal and state law, not to mention serious violation of Mr. and Mrs. Campbell's civil rights; and (iii) so, I concluded, they would not admit ownership of the transmitter. It seemed to me to be a futile act to directly confront BPD by asking or serving a subpoena. Likewise, (iv) if some unknown third party, or a "rouge" officer acting without permission or knowledge of other officer, had planted the transmitter, then BPD would have no information concerning the transmitter. I advised Campbell to consider pursuing issues related to the transmitter after he was sentenced.

(Id., pp. 18 - 19.) Mr. Bryant stated that his analysis of the problem was based on his assumption that since Movant reported the transmitter to the FBI, that the FBI would make a limited inquiry into the matter. (Id., p. 19.) Mr. Bryant claims that based upon the above assumption, he believed that

28

because the FBI never reported any information to Movant or counsel, that the FBI's investigation must have led the FBI to believe that the Beckley Police Department did not plant a transmitter in the Campbell home. (Id.) Mr. Bryant, therefore, concluded that he should not raise the issues about the transmitter at sentencing because "without powerful proof that the transmitter was connected to BPD, raising the issue would probably result in additional and unnecessary damage to his position for sentencing." (Id., p. 20.) Furthermore, Mr. Bryant explains that prior to sentencing the United States offered to concede that the firearms were not related to the crime in exchange for Movant's agreement not to attempt to obtain a reduced sentence under the safety valve. (Id., p. 21.) Specifically, Mr. Bryant explains as follows:

> Immediately prior to the sentencing hearing, Bushong proposed to me the following: that Campbell withdraw his attempt to obtain sentencing per the Safety Valve, in exchange for which the United States would agree that the defense evidence established that the firearms were not related to the crime. The result of the proposal would have been that Campbell faced a flat 60 month sentence. The benefit to Campbell of the proposal would have been that without a finding of firearms in the case, Campbell would be eligible for the U.S. Bureau of Prison's (BOP) drug treatment program, through which he stood to save up to 12 months from the 60 month sentence. If, on the other hand, the court made a finding upholding application of the firearm enhancement, then per BOP policy Campbell would not be eligible for the drug treatment program and could not receive the 12 month reduction.
>
> I discussed the proposal with Campbell. I recommended the proposal to him because: I felt that the odds of prevailing on all the issues the defense had to win was problematic and uncertain; weighed against the increased likelihood that Campbell would be able to enroll in the BOP drug treatment program, and that he was fully capable of successfully completing the program. I advised him of the possible outcomes: estimated sentences of 24 to 30 months if we won all issues: or a flat 60 months if we did not prevail on all disputed issues; or, following Bushong's proposed agreement, a good chance of 48 months after participating in the BOP drug treatment program. I counseled and advised him that his chances of actually serving less time in prison – the bottom line – was to accept Bushong's proposal. Campbell agreed.

(Id., pp. 21 - 22.)

Considering the totality of the circumstances facing Mr. Bryant, the undersigned finds that

Mr. Bryant did not act ineffectively in regard to his investigation concerning the transmitter. Mr. Bryant clearly attempted to determine the ownership of the transmitter by contacting Azden, the manufacturer of the device. When the above attempt proved fruitless, Mr. Bryant discussed with Movant other possible options of investigating the ownership of the transmitter. Mr. Bryant then advised Movant that he felt a more productive route would be to focus their attention on other issues besides that of the transmitter.  Specifically, Mr. Bryant determined that they would likely be more successful focusing their attention on proving that Movant's possession of firearms was not related to the crime, that Movant did not threaten a witness, and that Movant had admitted his own criminal conduct to the U.S. Probation office. Movant subsequently agreed to forego his attempt for a sentencing reduction under the safety value in exchange for the United States conceding that the firearms were not related to the crime. Based on the foregoing, the undersigned finds that Mr. Bryant acted reasonably in his investigation concerning the transmitter.

Furthermore, even assuming Mr. Bryant's lack of investigation concerning the transmitter to be unreasonable, Movant was not prejudice by the lack of investigation. Although Movant later discovered through the use of the Freedom of Information Act that the Beckley Police Department owned the transmitter, the undersigned finds that there is no reasonable probability that such information would have resulted in a lesser sentence. The District Court determined that Movant did not qualify for a reduced sentence under the safety value because he obstructed justice by reporting false information of police misconduct to the FBI. Approximately one month after the search of Movant's residence and one day prior to Movant's indictment,[12] Movant contacted the FBI accusing

---

[12]   The search of Movant's residence was conducted on December 10, 2004. Movant contacted the FBI on January 10, 2005, and was indicted on January 11, 2005.

Beckley police officers of spoiling evidence by removing fingerprints, seizing items without authority, conducting a search prior to obtaining a search warrant, and leaving a transmitter. (Civil Action No. 5:07-0120, Document No. 175-1, Exhibit 1, pp. 1 - 2.) Movant further reported that Sgt. Sweeney was selling marijuana and was taking marijuana and firearms from the evidence locker.[13] (Id.) Although Agent Schwartz acknowledged that he did not investigate Movant's claim that a transmitter was planted in his residence, Agent Schwartz testified that he investigated and found no merit to Movant's claims that Sgt. Sweeney sold marijuana or removed marijuana and firearms from the evidence locker. (Id., pp. 35 - 46.) Agent Schwartz thoroughly investigated Movant's false claim concerning Sgt. Sweeney, thus wasting governmental time and resources.[14] (Id., p. 35.) The District Court clearly had significant evidence to support its finding that Movant obstructed justice without considering the allegations concerning the transmitter.[15] Accordingly, Movant has failed to show that there is a reasonable probability that, but for Mr. Bryant's alleged errors, the result of the proceeding would have been different.

**C.     Movant's Claim that Joan Mooney was Ineffective.**

Movant argues that counsel acted ineffectively "by failing to meet with the [Movant] to

---

[13]   Agent Schwartz testified that the alleged gun transaction involving Movant and Officer Sweeney occurred in January, 2003, which was approximately two years before Movant was indicted. (Criminal Action No. 5:05-00013, pp. 42 - 43.) Movant informed Agent Schwartz that he purchased the gun from an individual who claimed that his "uncle was Stan Sweeney, and he stole this gun out of the evidence room, along with some drugs." (Id., p. 38.)

[14]   At the sentencing hearing, Agent Schwartz testified that him and other special agents invested approximately a week of time investigating Movant's "dirty cop" allegations. (Criminal Action No. 5:05-00013, Document No. 70, pp. 34 - 35.)

[15]   The District Court was clearly upset by Movant's false accusations concerning Sgt. Sweeney: "Well, if he had frankly admitted his guilt and not spun a web of falsehood, including sullying the reputations of honest people, he would be looking at two years instead of five." (Criminal Action No. 5:05-00013, Document No. 70, pp. 56 - 58.)

discuss the numerous issues of [Movant's] instant case," which "resulted in a brief being filed

without [Movant's] input, permission, and knowledge, which resulted in a moot brief." (Civil Action

No. 5:07-0120, Document No. 156-6.) Specifically, Movant contends that "Mooney failed to address

the illegally placed wireless audio transmitter whose true owners, the Beckley Police Department,

had been discovered by [Movant] through the use of the Freedom of Information and Privacy Act.

Mooney had no knowledge of the wireless audio transmitter because she had failed to communicate

in any manner with [Movant]. (Id., Document No. 178, pp. 39 - 40.) Movant states that his "sentence

was enhanced because the judge was unaware that the Beckley City Police Department was the

owner of the wireless audio transmitter." (Id., p. 40.) Thus, Movant is asserting that Ms. Mooney

acted ineffectively by failing to present an allegedly meritorious issue on appeal. Even assuming the

issue to be meritorious, counsel is not required to raise on appeal every non-frivolous issue requested

by a defendant. Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987

(1983)(stating that no decision "of this Court suggests . . . that the indigent defendant has a

constitutional right to compel appointed counsel to press nonfrivolous points requested by the client,

if counsel, as a matter of professional judgment, decides not to present those points.").

The"[w]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far

from evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. South

Carolina, 882 F.2d 895, 899 (4th Cir. 1989)(quoting Smith v. Murray, 477 U.S. 527, 536, 106, S.Ct.

2661, 2667, 91 L.Ed.2d 434 (1986). The undersigned notes that counsel filed an appeal on Movant's

behalf alleging that the District Court erred by (1) imposing the gun enhancement pursuant to

U.S.S.G. § 2D1.1(b)(1), and the obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1;

and (2) failing to grant Movant the safety valve provision under U.S.S.G. § 5C1.1, which resulted

in a sentence far above the guideline level, and substantially more than was needed to satisfy justice. Movant, acing *pro se*, filed a supplement brief arguing that (1) the District Court erred by applying a two-point obstruction of justice enhancement; (2) the District Court erred by not granting Movant acceptance of responsibility, and (3) trial counsel was ineffective for failing to seek a safety valve reduction.[16] The Fourth Circuit Court of Appeals affirmed Movant's conviction and sentence on July 12, 2006. United States v. Campbell, 2006 WL 1920641 (4th Cir. 2006). Accordingly, Movant's claim that counsel was ineffective by failing to appeal the enhancement of his sentence for obstruction of justice based upon his allegation concerning the transmitter is without merit.

**3.        Claim of Prosecutorial Misconduct.**

Movant alleges that his "Fifth and Fourteenth Amendment rights to the United States Constitution were violated when the government failed to expose the false and misleading testimony of its witnesses in [Movant's] July 14, 2005, sentencing hearing." (Civil Action No. 5:07-0120, Document No. 156-5.) Specifically, Movant contends that Detective Montgomery testified that no transmitter had been planted in Movant's residence even though Detective Montgomery knew that a transmitter had been lost inside Movant's residence. (Id., Document No. 178.) Movant, therefore, argues as follows:

> Any information in regards to this transmitter would be classified as "Brady Material." When Montgomery failed to testify that the transmitter did indeed belong to the Beckley Police Department and then give his explanation of how it got under the dresser in Campbell's bedroom, he hid exculpatory evidence that he knew would come into place in Campbell's sentencing. By Montgomery not admitting "ownership" he insured that Campbell would receive an "obstruction of justice enhancement" thereby effectively causing Campbell to lose the safety valve which

---

[16] The Fourth Circuit granted Movant's motion to file a *pro se* supplemental brief. Therefore, Movant clearly had the opportunity to assert his claim concerning the ownership of the transmitter in his supplement brief.

forced the sentencing court to sentence Campbell in the mandatory minimum sentence range.

(Id., pp. 26 - 27.) Movant further alleges that "Special Agent Schwartz chose to mislead the Honorable Judge David Faber in Campbell's July 14, 2005, sentencing hearing." (Id., p. 29.) Movant, therefore, contends that he "received an obstruction of justice enhancement for telling the truth." (Id.)

Respondent argues that Movant has "failed to demonstrate that his constitutional rights were violated by prosecutorial misconduct." (Id., Document No. 175, pp. 22 - 24.) First, Respondent argues that Movant "makes a quantum leap in alleging that since the City of Beckley has claimed ownership of the Azden transmitter found in his house, then that proves that the transmitter was 'planted' there by the Beckley Drug Task Force." (Id., p. 22.) Respondent states that "[t]here is simply no evidence to suggest that the transmitter was planted in defendant's home, or of any other government misconduct." (Id., p. 24.) Respondent notes that "Detective Montgomery and other Beckley police officers who were at defendant's house conducting the search have submitted affidavits stating that they did not plant the transmitter allegedly found in defendant's house." (Id., p. 23.)

Based upon a review of the record, the undersigned finds that AUSA Bushong did not present false testimony. Agent Schwartz clearly testified that he only investigated the allegations concerning Stan Sweeney and did not investigate allegations concerning the transmitter. (Criminal Action No. 5:05-00013, Document No. 70, pp. 36 - 37, 45.) Detective Montgomery testified that he did not plant a transmitter in Movant's residence. (Id., p. 48.) Although it appears that AUSA Bushong and Detective Montgomery were aware prior to sentencing that Officer Reynolds lost his transmitter during the search of Movant's residence, this does not prove that false testimony was

34

presented or that there was prosecutorial misconduct.[17] The only testimony given by Detective Montgomery concerning the transmitter was that he did not "plant" the transmitter inside the residence, which is supported by the affidavits of officers who conducted the search of Movant's residence. Detective Montgomery, Will Reynolds, Dean Bailey, Tim Sweeney, and Stan Sweeney submitted affidavits stating that they did not intentionally place any type of transmitting device inside Movant's residence. (Civil Action No. 5:07-0120, Document No. 175-1, Exhibit 9, pp. 28 - 43.) Officer Reynolds, however, acknowledges that "I accidentally dropped my transmitter during the search."[18] (Id., p. 29.)

Furthermore, the undersigned finds that exculpatory evidence was not withheld from Movant. If the prosecution suppresses Brady material, the disclosure of which would have in all

---

[17]   It appears that Detective Montgomery discussed the transmitter with officers and AUSA Bushong prior to Movant's July 14, 2005, sentencing hearing. (Civil Action No. 5:06-0659, Document No. 261-3, p. 2 and Document No. 261-6, pp. 1 - 5.) Detective Montgomery responded to Interrogatory No. 3 as follows:

> The first time I was aware that there was a transmitting device, I.D. number: EY-1714, located in the home of Ricky B. Campbell, was when I was contacted by Scott McCulloch, who inquired about the device with a picture of the device. At the time Attorney McCulloch showed me that device, I had no idea of what device it was or where it came from. After some discussion with my superiors, I learned that it was a cruiser transmitter device which had been reported as lost by Officer William Reynolds.

(Id., Document No. 261-3, p. 2.) Detective Montgomery admitted that he discussed the transmitter with his supervisors, Officer Reynolds, Officer Smith, Officer Bailey, Officer Tim Sweeney, and Officer Stanley Sweeney before June, 2005. (Id., Document No. 261-6, pp. 1 - 2.) Detective Montgomery further admitted that he discussed the transmitter with AUSA Bushong before the July 14, 2005, sentencing hearing. (Id., p. 4.)

[18]   Officer Reynolds explains that "[t]he transmitter at issue in this litigation was issued to me by the Beckley Police Department to be used in recording traffic stops and was never used by me, either intentionally or unintentionally for any other purpose than that." (Civil Action No. 5:07-0120, Document No. 175-1, Exhibit 9, p. 29.)

reasonable probability resulted in a different outcome, then the mandates of due process are violated. See United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Brady v. Maryland, 373 U.S. at 87, 83 S.Ct. at 1196-97. To state a valid Brady claim therefore, the evidence "must be favorable to the accused, either because it is exculpatory, or because it is impeaching, [the] evidence must have been suppressed by the State, either willfully or inadvertently," and the evidence must have been material to the verdict such that its suppression prejudiced the defense. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999); Monroe v. Angelone, 323 F.3d 286, 299-300 (4th Cir. 2003). The undersigned finds that there is no reasonable probability that a different outcome would have resulted if Movant and the District Court would have been advised prior to sentencing that the transmitter was owned by the Beckley Police Department and apparently lost during the search of Movant's residence. As explained above, the District Court had ample evidence that Movant obstructed justice based upon Movant's allegation that Officer Sweeney sold marijuana and stole firearms and drugs from the evidence locker. Accordingly, the undersigned finds that Movant's above claims are without merit.

**4.    Claim of Error in the Application of the Sentencing Guidelines.**

Finally, Movant claims that the District Court improperly failed to apply the "safety valve" reduction as set forth in U.S.S.G. § 5C1.2. (Civil Action No. 5:07-0120, Document No. 101.) Claims of errors under the Sentencing Guidelines, however, are generally not cognizable under Section 2255. The Fourth Circuit has explained as follows:

> [B]arring extraordinary circumstances . . . an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding. Section 2255 provides relief for cases in which 'the sentence was in excess of the maximum authorized by law.' Thus, while § 2255 applies to violations of statutes establishing maximum sentences, it does not usually apply to errors in the application of the Sentencing Guidelines.

United States v. Pregent, 190 F.3d 279, 283 - 84 (4th Cir. 1999). Movant's sentence in the instant case did not exceed the statutory maximum authorized by his plea of guilty (40 years). The undersigned notes that Movant was sentenced to the statutory minimum sentence (60 months). Therefore, the undersigned finds that Movant's claim that the District Court improperly applied the Sentencing Guidelines to be without merit.

<h3 style="text-align:center">PROPOSAL AND RECOMMENDATION</h3>

Accordingly, the undersigned respectfully proposes that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Document Nos. 101, 112, 151 .) and **REMOVE** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have three days (mailing) and ten days (filing of objections) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

Copies of such objections shall be served on opposing parties, Judge Faber, and this Magistrate
Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy
of the same to Movant and to counsel of record.

Date: November 6, 2009.

R. Clarke VanDervort
United States Magistrate Judge

38